UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
LONDON

| | | |
|---|---|---|
| MONROE L. COLEMAN, | ) | |
| | ) | |
| Petitioner, | ) | Civil No. 6:12-157-GFVT |
| | ) | |
| v. | ) | |
| | ) | **MEMORANDUM OPINION** |
| RICHARD B. IVES, Warden, | ) | **&** |
| | ) | **ORDER** |
| Respondent. | ) | |
| | ) | |

**\*\*\*\*   \*\*\*\*   \*\*\*\*   \*\*\*\***

Monroe Coleman is a District of Columbia ("D.C.") Code prisoner currently confined at the Federal Correctional Institution-Petersburg ("FCI-Petersburg") located in Petersburg, Virginia. In July 2012, Coleman was confined in the United States Penitentiary-McCreary in Pine Knot, Kentucky. While there, he filed a *pro se* petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241, challenging the Bureau of Prisons' (BOP) computation of his good time credits and his parole eligibility date. [R. 1]. Specifically, Coleman claims that he earned Good Time Credit while serving the mandatory minimum twenty-year sentence and that this credit should be applied against the remaining *non-mandatory* minimum sentences. Secondly, Coleman asserts an *ex post facto* violation, claiming that the BOP's decision not to award him any Good Time Credit while he was serving the mandatory minimum sentence is based upon rules that were not in effect at the time he was convicted of these offenses. Finally, Coleman claims that the BOP has failed to award him Educational Good Time credits for various educational programs in which he has participated while incarcerated and thus has miscalculated his Parole Eligibility Date ("PED").

Upon the initial screening of Coleman's petition, the Court concluded that additional information was needed in order to assess the merits thereof.  For the reasons stated in the Memorandum Opinion and Order of April 30, 2013 [R. 5], the Court directed the Warden to respond to the petition.  The Warden has filed a response opposing the petition [R. 16], and Coleman has filed a reply in further support of his petition.  [R. 28].  Thus, this matter is ripe for review.

Additionally, on November 12, 2014, an Amended Judgment was entered in one of Coleman's D.C. cases, Case No. F-5575-83C, which changed Coleman's sentence from a consecutive sentence to a concurrent sentence and gave him credit for time served.  [R. 61-3, Page ID# 547].  Based on this Amended Judgment, the BOP updated its computation of Coleman's PED, resulting in a revised PED of March 1, 2013.  Subsequently, Coleman has moved the Court to order the Warden to inform him why he has not been scheduled for a parole hearing, given his revised PED, and he requested that he be scheduled for a parole hearing in June of 2015.  [R. 58].  Coleman has also submitted a filing construed as a motion to order the Warden to advise him why he has not received certain Education Good Time Credit for obtaining his GED, his Paralegal Associate Degree, his Culinary Arts Training, and other BOP Educational Good Time, Meritorious Good Time, and other statutory good time. [R. 59].

Thereafter, Coleman received his initial parole hearing in June of 2015.  [R. 61-5].  With this development, the Warden has moved to dismiss Coleman's habeas petition as moot.  [R. 61].  Coleman having filed a response to the Warden's motion to dismiss as moot [R. 64], the Warden's motion to dismiss as moot and all other motions are ripe for review.

**I**

Although Coleman is a D.C. Code inmate, he is serving his sentence in custody of the

BOP.[1]  On January 27, 1986, the Superior Court for the District of Columbia, in Case No. F-

1258-85, sentenced Coleman to a 15-year to Life term for Robbery While Armed (Count C),

Assault with Intent to Commit Robbery While Armed (Counts L, M, and N), and First Degree

Murder While Armed (Count H). [Declaration of Augustus Faller, ¶ 3 and Attachment B thereto:

D.C. Superior Court Judgment and Commitment Order, Case No. F-1258-85 (R. 16-1; R. 16-3).

The D.C. Court ordered that the Robbery While Armed and the Assault with Intent to Commit

Robbery While Armed were to run no less than 15 years, or no more than life in prison, and

these counts were ordered to run concurrently with one another.  *Id.*  The court ordered that the

First Degree Murder While Armed count was to run no less than 20 years, or no more than life in

prison, and was to run consecutively to any other sentence.  *Id.*

On February 25, 1986, Coleman was sentenced in the Superior Court of the District of

Columbia, in Case No. F-5575-83C, to a 12 to 36 year term of incarceration for Unlawful

Possession with Intent to Distribute a Controlled Substance.  [Declaration of Augustus Faller, ¶ 4

and Attachment C thereto:  D.C. Superior Court Judgment and Commitment Order, Case No. F-

5575-83C (R. 16-1; R. 16-4).  The court ordered this sentence to run consecutively to the other

---

[1]On August 5, 1998, the United States Parole Commission ("USPC") assumed jurisdiction over District of
Columbia ("D.C.") Code offenders sentenced to parolable sentences, and over D.C. parolees, pursuant to
the National Capital Revitalization and Self-Government Improvement Act of 1997, Public Law No. 105-
33, § 11231(a)(1), 111 Stat. 712, 745 (effective August 5, 1998). *See also* D.C. Code 24-409; D.C. Code
Ann. § 24-131(a) (formerly § 24-1231); *Franklin v. District of Columbia*, 163 F.3d 625, 632 (D.C. Cir.
1998).

sentences.  *Id.*  Additionally, the sentence was enhanced to a life sentence due to life papers

being filed under D.C. Code § 22-104a (currently codified D.C. Code § 22-1804a).  *Id.*

On January 12, 1990, the Superior Court for the District of Columbia, in Case No. F-

1258-85, issued an Amended Judgment reducing the terms of incarceration on Counts C, L, M

and N, to a 12-year to life term.  [Declaration of Augustus Faller, ¶ 5 and Attachment D thereto:

D.C. Superior Court Amended Judgment and Commitment Order, Case No. F-1258-85 (R. 16-1;

R. 16-3).  The 20-year-to-life portion of the sentence was not amended by the court.  *Id.*

Accordingly, Coleman's mandatory minimum term is 20 years and his maximum term is life

imprisonment.  *Id.*  In 2000, Coleman was transferred to the custody of the BOP, pursuant to the

National Capital Revitalization and Self-Government Improvement Act of 1997 (or District of

Columbia Revitalization Act of 1997).   [Declaration of Augustus Faller, ¶ 6 and Attachment E

thereto:  SENTRY Report, Inmate History, ADM-REL (R. 16-1; R. 16-8).

Since Coleman was sentenced by the Superior Court for the District of Columbia and

since his criminal conduct occurred before 1984, his sentence was calculated under the BOP's

Program Statement 5880.33, District of Columbia Sentence Computation Manual, and Program

Statement 5880.30, Sentence Computation Manual ("Old Law" –Pre-CCCA-1984.[2]  [Declaration

of Augustus Faller, ¶ 7] (R. 16-1).

---

[2] Both Program Statements can be viewed at the BOP's Public Website, located at:
http://www.bop.gov/DataSource/execute/dsPolicyLoc. Program Statement 5880.33, District of Columbia
Sentence Computation Manual, can be found at:  http://www.bop.gov/policy/progstat/5880_033.pdf.
Program Statement 5880.30, Sentence Computation Manual ("Old Law"–Pre-CCCA-1984), can be
viewed at: http://www.bop.gov/policy/progstat/5880_030.pdf.

The BOP prepared a sentence computation for Coleman based on a maximum term of life, a minimum term of 44 years, and a minimum mandatory term of 20 years. [Declaration of Augustus Faller, ¶ 8, and Attachment F thereto:  SENTRY Report, Sentence Monitoring Computation Data ("SMCD")] (R. 16-1; R. 16-9).  Coleman's sentence was computed to have commenced on January 27, 1986, and he received a total of 352 days of jail credit.  *Id.*  Jail credit days are for the periods from September 28, 1983 through September 28, 1983; January 3, 1985 through January 11, 1985; and from February 19, 1985, through January 26, 1986.  *Id.*  The SMCD, computed as of June 13, 2013, reflects that Coleman's PED at that time was March 22, 2021.  (R. 16-9, Page ID# 494).  Coleman's SMCD also indicate that he has earned 93 days of Extra Good Time under 18 U.S.C. § 4162 (repealed October 12, 1984).  [*Id.*, Attachment G, SENTRY Report, Sentence Monitoring Good Time Data] (R. 16-1; R. 16-10).  Coleman's SMCD further reflects that there was no documentation for Education Good Time from Lorton, where Coleman was housed prior to his transfer to a federal prison.  (R. 16-9, Page ID# 494).

For reasons unknown to this Court, on November 12, 2014, an Amended Judgment was entered in Coleman's D.C. Case No. F-5575-83C, which changed Coleman's sentence from a consecutive sentence to a concurrent sentence and gave him credit for time served.  [R. 61-3, Page ID# 547].  Upon receipt of this Amended Judgment, the BOP updated its computation of Coleman's PED, resulting in a revised PED of March 1, 2013.  Since his PED had already passed, Coleman became entitled immediately to his initial parole hearing.  Coleman received his initial parole hearing in June of 2015.  [R. 61-5].  Thus, that portion of Coleman's petition claiming that the BOP has miscalculated his PED and his request for a recalculation of his PED

has been mooted by the fact that the BOP has recomputed his PED and that he has already received his initial parole hearing.

## II

### A

Coleman claims that he is entitled to Good Time credit while serving the mandatory minimum 20-year sentence and that this credit should be applied against the minimum, non-mandatory sentences. He also appears to allege an *ex post facto* violation, claiming that the BOP's decision denying him the right to earn good time while serving the mandatory minimum portion of his sentence is based upon rules that were not in effect at the time that he committed his offenses. Finally, Coleman claims that he is entitled to Educational Good Time credit because he has participated in various educational programs while incarcerated.

### 1

Coleman was convicted of crimes by the District of Columbia Superior Court that occurred prior to 1987. At that time, the applicable rule for awarding good time credit to prisoners convicted of crimes in the District of Columbia but serving time in prisons maintained by the BOP was essentially the same rule applied to other federal inmates convicted of federal crimes in other jurisdictions. In 1987, those rules were altered when the Comprehensive Crime Control Act ("CCCA") of 1984 became effective regarding inmates whose crimes where not District of Columbia crimes, and it became necessary for the BOP to distinguish between D.C. inmates and others in the federal system. BOP Program Statement 5880.030 was instituted in 1993; however, it did not address the interplay between mandatory minimum sentences and good

time credits.  In 2010, the Program Statement was updated to 5880.033, clearly stating that no

good time credit is earned while serving a mandatory minimum sentence, as seen below:

> b. A minimum term that exceeds the mandatory minimum portion, may receive
> good time credits for the difference between the date the mandatory minimum term
> expires and the date the total minimum term expires.  The final parole eligibility
> date may never be reduced to a date that is earlier than the date that would be
> established based only on the mandatory minimum term.

16.17(b).

Thus, D.C. Code inmates do not accrue any good time credit while serving a mandatory

minimum sentence.  Generally, such inmates earn 10 days of Institutional Good Time

for each month of the sentence D.C. Code 24-428 (currently codified as 24-201.29) (repealed

August 1994).  However, D.C. Code 24-434 (currently codified as 24-221.06) (repealed) states

that "institutional and educational good time credits shall not be applied to the minimum terms of

persons sentenced under §§22-3202, 33-501, 33-541, 22-2404(b) or 22-3204(b)."  Under a

literal reading of that statute, Coleman would not be entitled to apply any good time credit to his

minimum sentence at the very least for those crimes.

However, the BOP does not interpret or apply that program statement that severely.

When the minimum term exceeds the mandatory minimum portion of the sentence, as is the case

with Coleman's sentence, Institutional Good Time Credits can only be awarded for the difference

between the date the mandatory minimum term expires and the date the total minimum term

expires.  Program Statement 5880.33(16.17) (b); *Kinard v. O'Brien*, 2008 WL 2095112, *3

(W.D.Va. 2008) ("[T]he BOP continues in the tradition of the D.C. Department of Corrections

and allows an inmate whose minimum term of imprisonment exceeds the mandatory minimum

7

term of imprisonment to receive Institutional Good Time Credits for the difference between the date the mandatory minimum term expires and the date the total minimum term expires.")

Applying these rules to Coleman's sentence computation, Coleman received Institutional Good Time Credit for 24 years, representing the difference between the 44-year minimum term and his 20-year mandatory minimum term.  [Declaration of Augustus Faller, ¶ 10] (R. 16-1).  Coleman was awarded 2,880 days of Institutional Good Time calculated as follows:  24 years x 12 months x 10 days = 2,880 days.  [Declaration of Augustus Faller, ¶ 11] (R. 16-1).

**2**

Coleman is an "old law" D.C. Code inmate serving an "old law" sentence.  By its terms, the BOP Program Statement draws a distinction between "old law" and "new law" sentences; however, both sections of the Program Statement deny credit for time served on a mandatory minimum sentence.  There is no evidence that the BOP ever awarded good time credit for time served on a mandatory minimum sentence.

Coleman's fails to provide any legal support for his argument that he should accrue Institutional Good Time for the 20-year mandatory minimum term and simply have those credits applied to the non-mandatory minimum portion of his sentence.  Coleman makes no reference to any citation suggesting that there was a prior law under which an inmate could earn good time credit while serving a mandatory minimum sentence.  The Program Statement is entitled to deference.  *Reno v Koray*, 515 U.S. 50 (1995), and his *ex post facto* claim in this regard is without merit.

**B**

D.C. Code inmates may also receive Educational Good Time (EGT) credits under D.C. Code 24-2401.01(a) (formerly codified at D.C. Code 24-429). See 28 C.F.R. § 523.32. An inmate can earn up to five days per month of EGT for each month he is enrolled in a BOP-designated program, if he successfully completes the program. *Id.* Eligibility for EGT can be limited based on: (a) a violation of prison rules; and (b) the nature of the offense committed. *See* 28 C.F.R. § 523.33. To earn EGT, an inmate must have (a) his Unit Team approve or design a plan that is designated by the BOP for the inmate to complete, and (b) the Supervisor of Education find that the inmate successfully completed a Bureau-designated education program on or after August 5, 1997. *See* 28 C.F.R. §§ 523.31(c) and (d).

In support of Coleman's claim that he is entitled to EGT, he relies on the following: (1) an Interim Progress Report from the Education Department at Northeast Ohio Correctional Center concerning Computer Literacy and Principles of Business, classes he apparently attended from August 1997 to February 1998; (2) a Computer -Typing Tutor 6 class he completed on April 21, 1999; (3) a Computer - MS Windows 3.1 class he completed at the CCA Central Arizona Detention Center on May 17, 1999; and (4) a DOS version 5/6 class he completed at the CCA Central Arizona Detention Center on July 14, 1999. [R. 32]. Coleman also claims that he is entitled to EGT for obtaining his GED, his Paralegal Associate Degree, his Culinary Arts Training, as well as other BOP EGT, Meritorious Good Time, and other statutory good time credit to his sentence. [R. 59].

However, irrespective of these educational courses Coleman apparently has taken and completed on an *ad hoc* basis, he fails to provide any documentation that he has participated in

9

and/or successfully completed any BOP-designated educational program that his Unit Team approved or designed for him to complete, as required by 28 C.F.R. §§ 523.31(c) and (d). Coleman's BOP records lack any documentation to support his claim that he is entitled to educational good time credits. [Declaration of Augustus Faller, ¶ 12] (R. 16-1). Coleman's random, independent selection of educational courses or classes to complete is simply insufficient to qualify for EGT.

### C

D. C. Code inmates sentenced prior to June 22, 1994, such as Coleman, are eligible to receive Extra Good Time credits under now-repealed 18 U.S.C. § 4162. Program Statement 5880.33 (11.4) (b). Extra Good Time credits include Industrial Good Time, Meritorious Good Time, Camp Good Time, and Community Corrections Good Time. [Declaration of Augustus Faller, ¶ 13] (R. 16-1). Extra Good Time is deducted from the maximum term of the sentence, pursuant to 18 U.S.C. § 4162. *Id.*

Coleman has received a total of 93 days of Extra Good Time credit, itemized as follows: he received Industrial Good Time at USP-Atlanta, Georgia, for the period time from July 16, 2003 to February 5, 2004, and at USP-McCreary, in Inez, Kentucky, for the period from February 27, 2005 to June 21, 2005. [Declaration of Augustus Faller, ¶ 13; Attachment G thereto] (R. 16-1). Additionally, he received Meritorious Good Time for the period from February 13, 2004 to February 6, 2005 at USP-Big Sandy. *Id.* However, since Extra Good Time is deducted from the maximum term of the sentence, pursuant to 18 U.S.C. § 4162, Coleman's Extra Good Time has not been deducted from his life sentence. *Id.*

10

**III**

In summary, Coleman is not entitled to accrue any Good Time Credit while serving a mandatory minimum sentence; he was never entitled to receive Good Time Credit while serving a mandatory minimum sentence.  The rule has on this point did not change after Coleman was convicted and sentenced on the D.C. offenses; it has always been the rule, and the BOP has correctly applied the law that was in place when Coleman committed his offenses.  Thus, Coleman's claim that the BOP has committed an *ex post facto* violation of the Constitution has no merit.

As to Coleman's claim that the BOP has erred for not awarding him any Educational Good Time credit on his sentence, Coleman has not provided the Court with any evidence that he has successfully completed a BOP-designated educational program on or after August 5, 1997, that was approved or designed by his Unit Team, as required by 28 C.F.R. §§ 523.31(c) and (d). His *ad hoc* completion of his hand-picked educational courses does not qualify for any award of EGT.

Concerning Coleman's claims that the BOP has erred in computing his PED to be March 22, 2021, that his PED should be much sooner than that date, and that he is entitled to an initial parole hearing, those claims have been mooted by the following developments occurring during the pendency of this action:  (1) in November of 2014, an Amended Judgment was entered in one of Coleman's D.C. cases, which ordered that sentence to be a concurrent sentence, rather than a consecutive sentence; (2) upon receipt of that Amended Judgment, the BOP recomputed and revised Coleman's PED; (3) based on Coleman's Sentence Monitoring Computation Data as of May 11, 2015, the BOP revised his PED to be March 1, 2013 [R. 61-4, Page ID# 550], (4) given

11

this after-the-fact PED of March 1, 2013, Coleman was promptly scheduled for a parole hearing, and (5) Coleman received his initial parole hearing in June of 2015. Thus, the BOP's error, if any, in its prior computation of Coleman's PED has been corrected, and he has received a portion of the relief requested: a PED sooner than March 22, 2021, and an initial parole hearing.

Accordingly, **IT IS ORDERED** that:

1.      Coleman's motion for the Court to compel the Warden to inform him why he has not been scheduled for a parole hearing, given his revised PED, and his request that he be scheduled for a parole hearing in June of 2015 [**R. 58**] is **DENIED AS MOOT**;

2.      Coleman's filing construed as a motion to order the Warden to advise him why he has not received certain Education Good Time Credit for obtaining his GED, his Paralegal Associate Degree, his Culinary Arts Training, and other BOP Educational Good Time, Meritorious Good Time, and other statutory good time [**R. 59**] has no merit and is **DENIED**;

3.      Respondent's motion to dismiss Coleman's § 2241 petition as moot [**R. 61**] is **GRANTED IN PART**, in respect to Coleman's claim that the BOP had erred in computing a PED of March 22, 2021, and in respect to Coleman's claim that he is entitled to be scheduled for his initial parole hearing;

4.      Coleman's remaining claim in his § 2241 petition that he is entitled to additional good time credit on his sentence than that awarded by the BOP is without merit and is **DENIED**;

5.      Coleman's petition for a writ of habeas corpus [**R. 1**], as amended and supplemented, is **DENIED**, in part as moot and in part on the merits;

6.      The Court will enter an appropriate judgment contemporaneously; and

7.      This matter is **STRICKEN** from the active docket.

This the 24th day of August, 2015.



**Signed By:**

*Gregory F. Van Tatenhove*

**United States District Judge**